The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and His Honorable Court. Good morning, ladies and gentlemen. Please be seated. We have three cases on the calendar this morning. Trademark case from the PTO, patent case from a district court, and a patent case from the PTO. Our first case, trademark case in Re Mosa Boutique, 2017-11-29, Mr. Frederick. May it please the Court. Good morning, Your Honors. The general rule applicable in this case is that goods should not be deemed derelated simply because they are sold in the same types of establishments. Well, it's the same trademark, right? Same name. It is, Your Honor, but that should not be dispositive in the case where the goods and services are unrelated, as the Board has ruled in several, in fact, many of its own opinions. Is it so binary? It's either related or it is unrelated? Or is there some kind of continuum, perhaps, where we try to make an assessment of, you know, the relative relatedness? In my experience, Your Honor, and the research that we have done, it's fairly binary. We've cited at least seven opinions of the Board in our briefing. I mean, there's a difference between, say, shoes and microprocessors, right? And then things to perhaps enhance one's appearance, like clothing and beauty products. Do you see how the latter is a little bit more related than the former, which is shoes and microprocessors? Certainly, Your Honor, and that's part of the issue in this case, is that the USPTO's evidence was simply that these goods are on the same website, full stop. We didn't get any of that analysis until the Board's opinion, and even their analysis was about ten words, which says that goods that make you look good are related as long as you can find them on the same website, and that's not sufficient. Particularly in the face of the Board's own precedent that these particular goods, clothing on the one hand and beauty supplies on the other, are not per se related outside of the context of fame or desire marks. And it's very clear, and this is an ex parte proceeding where it is not appropriate to get into the issues of fame. That is the purview of an inter-party proceeding. Are you the one, though, trying to introduce the notion of fame into this ex parte proceeding? We're not, Your Honor. Our point with the discussion of fame is simply that the cases that the Board and the solicitors in this case are citing for relatedness of the goods and services all involve inter-partes proceedings where fame or a desire mark was involved. And that's simply not the case that we're in. We're in an ex parte proceeding where it's inappropriate to even get into the matter of fame. And the Board's own precedent is that in these ex parte cases where there is no fame or a desire mark involved, these particular specific goods are not related goods. I thought part of your argument was that, okay, if it's a famous mark, then it's okay to say that beauty products and clothing are related. But if the mark is not a famous mark, then you can't say that beauty products and clothing are related. Was that part of your argument? It is, Your Honor. So then the question of relative fame of a given mark is pivotal to your argument. Correct, Your Honor. So you would like us to, I guess, make a ruling that we can only and the PTO can only consider beauty products and clothing to be related goods when the mark is a famous mark? Or whether goods are designer goods. There are courts that hold both ways. But yes, Your Honor, that is the ruling that we seek from this Court. Okay. Go on. So as I mentioned, we cited at least seven different Board opinions ruling that clothing on the one hand and beauty supplies on the other are not per se related goods. One of those cases was non-precedential. And we spent a little more time discussing that case because the facts of that case are so similar to the current proceeding. However, there were at least six other Board opinions that are precedential at the Board level saying that these goods are not related. So is there any daylight between not per se related and this case? That is, did the Board really say that they are per se related as opposed to sampling what it found on the web and applying a little bit of common sense and common knowledge and saying, Well, here they're kind of related enough. Or is there really nothing that the Board did that would allow it to draw this conclusion or fact-finding, I guess, on the related component? Or maybe it's the legal significance once you get past the facts. But is there nothing that the Board did that could support its determination unless it were relying on a per se relation? I don't believe so, Your Honor. I mean, the Board's ruling in this case is a complete 180-degree turn from the other precedential opinions that we cited, including other ex parte cases like Inouye Jacques-Bernier, where at the ex parte level the Board said, Outside of the context of fame or designer marks, these goods are simply not related. And in cases like this, we believe it's more appropriate to allow the mark to publish, and then if the owner of the cited registration believes that it would be damaged by this registration, then it's appropriate for that registrant to file an opposition or later cancellation proceeding where they can bring these arguments of fame, causing likelihood of confusion where the goods and services are unrelated. So as a matter of public policy, we think it's inappropriate for the Board to find goods and services on a website, give a minimal amount of analysis, and call it a day when their own previous precedent has said that they're unrelated. In that case, the application should publish and should be left to the parties in an opposition proceeding. So if the Board had, or I forget, the examiner is the one who collected the website references, and what might you have done to, suppose the examiner had said and the Board had said, there's a fair bit of indication that for small store operations, and both of these trademarks are about the services of the small shop, the boutiques, one the medical thing and the other the clothing, that in that context it is pretty clear that it's just not very uncommon for those shops to sell a variety of liquid products. Why should that not be enough, regardless of whether the shop is known only in South Beach or also worldwide? Your Honor, I rely on the Board's own precedent and rationality in these cases. For instance, in Inouye Jacques-Bernier, they said that outside of the context of a famous mark or designer goods, consumers just don't expect that the source of these goods and services are going to be related. Sure, if it's Coach or Chanel or Burberry, they may make this expectation, but outside of that context, consumers simply aren't going to expect the marketing to be related, etc. The Board's only response to these citations was to call Inouye wild an opposite, despite the fact that one of the members of the Board sitting in that opinion also cited the Inouye wild board. They ignored the rest of the precedent that was cited. In this case, the solicitors call Inouye wild irrelevant and call the other cases irrelevant because they deal with goods and not retail services, as we have in this case. But there's a Federal Circuit opinion, Inouye Hyper Shops, Ohio, which says that goods and the services selling those goods are related for purposes of likelihood of confusion. So those cases are directly relevant, and the Board regularly cites that opinion for that proposition, and even before Inouye Hyper Shops used that analysis. One example being Inouye U.S. Shoe Corp., which is a commonly cited case of the Board. So those cases are directly relevant and were not addressed by the Board or the solicitors in briefing this case. We think that's legal error to dismiss those cases out of hand and call them irrelevant. Did the Board itself address the wild case or just not? In a footnote, I believe they called it an opposite. They addressed sort of the issue of fame generally and said that it is not their position that outside of fame, these goods are unrelated in the face of their own precedent. Oh, I see. This is the unnamed non-precedential case that's an opposite? Correct, Your Honor. I see. Which, you know, it is non-precedential, but it's also not worthless. The TMEP says that the Board permits the citation of non-precedential final decisions, which are cited for whatever persuasive value that it may have. And considering the facts in those cases were so similar to the facts of this case, I certainly believe it had more persuasive value than a footnote in the Board's opinion. If there are no further questions, I'll reserve the remainder of my time for rebuttal. We will save it for you. Excuse me. Ms. Walker? May it please the Court. This case is not about a goods analysis. This case is about appellant seeking to register the identical store name over a registered store name. There are no cases that appellant cites, and we have not found any that address the exact situation here. And that is not surprising, because as the evidence in this record shows, when there are identical store names, consumers are likely to believe that they come from the same source. The evidence in this case specifically— Let me start with a basic hypothetical. What if prior registration was Mosa for shoes, and the applicant was coming in for Mosa for microprocessors? So that would be an example where the marks are identical, but the relatedness of the goods would very clearly be completely unrelated. That's right, Your Honor. So would the PTO register the new mark under those circumstances? Yeah, and just to be clear in the hypothetical, you're talking about goods and not store services, is that correct? Yes. Yes, I believe so, and I think that that's reflective in the register here, where there are other third-party Mosa marks for disparate goods and services. Right, so that's what it comes down to then. That's why they are pushing so hard on the relatedness question, and that it can be pivotal in terms of trying to decide whether to grant the trademark. Oh, I don't question that the relatedness question is relevant and pivotal to some extent, although keeping in mind that these are identical marks, and because they are identical marks, the relatedness isn't necessarily—doesn't need to be quite as close. But my point is just that what you're comparing here is a store name versus a store name, and so you're not comparing even the underlying goods. So in your judgment, you should change Judge Chen's hypothetical slightly, so it's the name of the store in the category of stores that sell shoes and in the category of stores that sell microprocessor stuff. I think the outcome is the same, but again, it's going to depend on the evidence. And so if you have evidence of stores—and I want to be clear here that the evidence about the stores is evidence about stores that sell a relatively limited subset of goods, right? Clothing and beauty type products. These aren't megastores. Department stores. These aren't department stores. But leaving that aside, that might be a different case. I do think that the outcome is probably the same for stores that are limited to microprocessors and stores that are limited to shoes, assuming the evidence doesn't show that those are typically goods that are sold in the same stores. I understand. I just wanted to be clear that the stores are a slightly different analysis, in part because when you go into a shopping mall, for example, and you see a store name such as Mosa or, for example, Gap, and then you may see a Gap body next door, consumers are going to understand that those come from the same store. So if you see a Mosa clothing store and a Mosa beauty supply store, consumers are going to understand that that's the same company offering both of those stores. And that's the analysis. That's the relevant analysis here. But even if you were to go to the goods, I want to clarify some of the board precedent here because, in particular, the Wet Seal case stands for the exact opposite proposition that Appellant has articulated here. In that case, which is a board precedential decision, the board said the evidence is insufficient to demonstrate a closer's mark is famous. And then the board went on to say that we find the parties' goods and services related. And the services and goods in that case were retail clothing stores versus cosmetic products and fragrances. So it is just not true that the board has established precedent that these goods and services can never be related. And, again, in Jacques Bernet, which my friend just mentioned, in that case, the board did say there is no per se rule that there is a likelihood of confusion between the respective goods. But they said that, in general, the cases in which confusion has been held either involve famous marks or identical marks. And in this case, we have identical marks. If there are no further questions. Can I just ask you, is there any role under the relevant legal standards for consideration of how geographically close the two stores are? That could be a relevant consideration in a district court infringement action. For registration purposes, where you have an unlimited registration, that is presumed to cover the full United States. To give the opportunity to expand into the whole nation if you choose to want to. That's right. I mean, that's the presumption of the registration, unless it's limited geographically. Is there any discussion going on inside the agency about potentially regularizing the question in front of us here today on relative fame of the mark in terms of trying to understand the relatedness of goods? I ask that because in spite of your distinctions you want to make, your fine distinctions, there does seem to be a handful of cases not controlling on us, as well as board decisions or registrations that seem to be a little bit inconsistent in practice in terms of understanding this question of how much does it matter whether the mark is famous in trying to make an assessment of whether that further biases consumers to be more likely to think that the goods are related versus unrelated. Well, so on the question of whether it determines whether it's unrelated or related,  is a separate consideration. So fame is relevant. I'm talking more about inside the agency. Because the other side is going to be able to find registrations that go one way and other denials of registrations. And then the same thing with board decisions. So that's why I'm trying to figure out. Part of the other side's argument is more the way I see it is there needs to be a uniform practice. And he's being whipsawed because there's a non-uniform practice going on inside the agency. Well, I don't know that it's a non-uniform practice. Again, in the registration context, in the ex parte context, the PTO doesn't have any ability to measure fame. But we also follow this court's precedent. And fame is certainly, when it's present, and this court's precedent is clear, that when it's present it is a very significant factor in the overall likelihood of confusion analysis. I understand you're talking about the fame factor of the DuPont factors. I'm talking about, in the context of this case, where the other side is trying to promote the idea based on earlier decisions that, not from this court, that suggest that the relative fame of a mark will drive consumers' beliefs into whether to believe certain categories of goods are in fact related with each other. Right. I mean, again, I don't think that's consistent with this court's precedent, so I'm not quite sure how to answer the question. But part of that, a lot of those cases that appellants cited, one, are older cases, and two, go to the overall likelihood of confusion analysis. There were a couple of older cases that said there's no per se rule. And we agree there's no per se rule. The evidence has to demonstrate it. And so outside of, you know, we can accept that there's no per se rule. Maybe you're resisting the premise of my question, which is that perhaps there's some non-uniformity in agency practice. And if you don't think that, then I understand. There wouldn't be necessarily any contemplation of whether to do something in the TNEP to regularize the practice. That's right, Your Honor. I don't think there is any non-uniformity because all of these questions are factual questions, and they're determined on the evidence before the board. Am I wrong in thinking that while each of the DuPont factors, or at least each of the two that are relevant here, the similarity here, identity, and then relation, are treated as factual matters, but in part because the word related covers an almost indescribably indefinite amount of territory, the ultimate standard is likelihood of confusion, and that's not treated as a factual matter. Isn't that right? Well, that's true. Likelihood of confusion is not. And that's the ultimate standard, isn't it? That is the ultimate standard. So obviously there is some relation between the subject matter of these two stores. But if that relation is of the extremely attenuated sort, then it might not be enough to support what is a legal determination of likelihood of confusion. And then we're back into the soup of trying to figure out how do we determine what kinds of circumstances support the legal conclusion. I agree with that on a general level. In this case, the only challenge is to the board's relatedness finding, and the board's relatedness finding is a substantial evidence review, so that is a factual question. There's no question, there's no dispute, both that the marks are identical and that the prior mark is strong, that it's arbitrary, and the appellant hasn't contested that. So the only question here is whether the board's decision was supported by substantial evidence on the relatedness issue. Is there case law that says the relative, I don't know, arbitrariness versus suggestiveness of the prior registered mark or of the mark that's identical to the proposed mark lends weight to understanding the relatedness of the goods factor? There is, and we cited it in our brief. The closer the marks are, the less related. No, I get that in terms of identity of the proposed mark versus the registered mark, but you also made an additional argument, which is the nature of the mark itself is quite arbitrary in this instance, or at least the board made that conclusion. Because of its total arbitrariness, that should somehow give further weight to the idea that consumers are going to find these goods to be related, and I was just wondering, is there case law that actually says that? I'm not sure that we articulated it quite that way. What we said is that there's a broader scope of protection, and so it may be, again, I don't even think that we need to. Well, I'm talking about the board's decision. I mentioned this, but okay. Unless the court has any further questions. Thank you, Ms. Walker. Mr. Frederick has some rebuttal time, four and a half minutes if you need it. Your Honors, once again, the solicitor made the allegation that the cases cited are irrelevant because they deal with goods and not services and I won't spend too much time on this, but as I discussed previously, in-ring hyper shops is directly about-faced with that. Do you agree with the proposition that for current purposes, geographic proximity of the two stores at issue is irrelevant so that one needs to think about this as though you were walking down the corridor of a mall and you saw both shops? That is correct, Your Honor. The registrations are given the full effect of their IDs, and in this case, the identification of the registration is not limited by geography, so geography would not be a factor here. However, solicitor's example, once again, of gap and gap body is an example of one of the most famous trademarks there is in the clothing apparel industry. So I take with a grain of salt the hypotheticals that you're walking in the mall and confusing famous marks. These are not famous marks, as we have said. There's no evidence. But you think no likelihood of confusion if you're walking down the mall and you see Mosa clothing boutique and Mosa skin care products? I mean, Your Honor, I think consumers are conditioned to see a wide variety of options. And if there were two different stores selling different products, I guess as a consumer I would ask myself why they bother paying rent twice and why not sell them both in the same store? So it's a valid point, Your Honor, but again, we're speaking in hypotheticals here. And the board in its own precedent has said clearly that outside of the context of fame, certainly you would expect gap and gap body to be the same source, but not necessarily for non-famous retailers. And again, these are not general goods stores, as the point was made. These are very narrow. And again, consumers are used to seeing very narrow stores in malls and other outlets specializing very deeply in one particular area, be it candles or sporting goods or anything else. And just one final point, the Wet Seal case that Solicitor referenced. We discussed this at length in our reply brief. And this case is not typical of the other cases that were cited. First of all, it's an inter partes proceeding, so there was lots of evidence about fame. The reason the board didn't find fame was an evidentiary issue. There were some gaps in the evidence. And there was also an odd twist in that case where the applicant was actually the senior user, and it had licensed the mark to the registrant. So there was also consideration of the relatedness of these parties and who was doing what pursuant to the license agreement. So that case doesn't really cleanly apply to the case at hand. Much more applicable are the other cases that were cited. If there are no further questions. Thank you, Mr. Frederick. We'll take the case under advisement.